UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR R. TALBOT and
KELLEY A. BEZRUTCH,

            Plaintiffs,            Case Number 19-10214
v.                                                                                Honorable David M. Lawson

U.S. BANK, National Association,

            Defendant.
_____/

## **OPINION AND ORDER GRANTING MOTION TO DISMISS**
## **AND DISMISSING CASE WITH PREJUDICE**

After falling behind on their mortgage payments, and unsuccessfully pursuing several lawsuits, the plaintiffs lost their home to foreclosure. They have filed yet another lawsuit, this time alleging fraud against the foreclosing bank, based on the premise that the bank misrepresented throughout the foreclosure proceedings that it had a valid claim on the property. The plaintiffs continue to assert that alleged defects in the chain of title rendered that claim false. But the validity of the bank's interest was an essential fact that anchored each of the judgments against the plaintiffs in the state court cases. Since that fact was determined against them, it cannot be contested here without running afoul of established preclusion doctrines. For this reason, the defendant's motion to dismiss the complaint must be granted and the case must be dismissed.

I.

Because this is a motion to dismiss, the following facts are stated as alleged in the plaintiffs' extensive (38-page, 191-paragraph) complaint, except where otherwise noted.

In August 2005, plaintiffs Arthur Talbot and Kelley Bezrutch entered into a purchase contract to buy their former home on South Huron River Drive in Ypsilanti, Michigan for

$574,000. They made a down-payment of $86,100 and financed the balance of $487,900 with a loan made by Wilmington Finance. The loan was secured by a mortgage. The loan was "securitized" into a trust arrangement with defendant U.S. Bank, N.A. as Trustee. The plaintiffs allege that there were improprieties in the transfer of the mortgage via the trust, including that transfers of interest were not recorded or were back-dated so that they appeared to have occurred years before they actually happened. The plaintiffs eventually ran into problems keeping up with their payments on the mortgage, and defendant U.S. Bank initiated a foreclosure proceeding in state court on December 10, 2009.

The plaintiffs allege that the defendant "misrepresented" throughout the foreclosure proceedings that it had a valid claim on the property, when, because of the alleged defects in the chain of title, in fact it had none. Throughout 2010, the plaintiffs attempted to negotiate a loan modification with the defendant, but to no avail. At some point, the defendant's counsel represented that the sheriff's sale "would be adjourned" to December 9, 2010, so that the plaintiffs could further pursue a loan modification. However, when plaintiffs spoke to loan servicing agents in November 2010, they were told that the law firm plaintiffs had been "working with" was not assigned to the account, and that the plaintiffs should communicate with the defendant directly and continue to submit information to support the loan modification request. Plaintiffs communicated further with the defendant during 2011 and were given conflicting reports about the status of their account. And at one point they received a letter indicating that their monthly payment had been increased by more than $2,000 per month to cover the accrued delinquency.

On September 8, 2011, while the defendant was still telling the plaintiffs that their loan was merely "delinquent" and not "in foreclosure," a sheriff's sale was held, at which the defendant was the high bidder. In April 2012, the defendant's agents presented to the plaintiffs a "move out

agreement" indicating that the defendant had obtained title to the property by the foreclosure sale and proposing that if the plaintiffs moved out by May 28, 2012, then the defendant would pay them $3,385. Plaintiffs heard nothing further until they were served with an eviction complaint on May 7, 2012. The plaintiffs initially failed to appear at a hearing due to their misunderstanding about which court the case was filed in, and a default judgment was entered against them.

The plaintiffs retained counsel who negotiated a consent order under which plaintiffs would retain possession of the home for another month, during which the defendant represented that they could continue to negotiate a redemption of the property. However, after the consent order was issued, the defendant refused to entertain the plaintiffs' offer to make a lump sum payment to retire the delinquency on the loan. The plaintiffs continued to make offers to redeem the property, which were refused. Eventually, in July 2012, an eviction notice was posted at the property, and plaintiffs' counsel withdrew from the case, after representing that he "could not accomplish anything further."

In August 2012, the plaintiffs filed a motion to stay the eviction, which was granted by the state court. A mediation was scheduled, but the plaintiffs did not attend because a notice of the mediation date was mailed to the wrong address. Because they failed to appear, a default judgment again was entered. However, the plaintiffs managed to retain new counsel, who successfully moved to set aside the default. A new mediation date was scheduled, and the state court ordered the plaintiffs to pay $3,300 per month into an escrow account, which they did. The plaintiffs then offered to redeem the property for a cash payment of $285,000, which was above its market value but below the loan balance. The plaintiffs and their counsel appeared at a July 22, 2013 mediation hearing, at which they were told that the property had been sold by defendant at auction.

The state court held a hearing to determine the status of the case after the "surprise" auction sale. At that hearing, defendant's counsel represented that the defendant would not consider any offer other than redemption for the full deficiency amount of more than $574,000. The state court judge ordered the parties to continue negotiating and to attempt to reach a repurchase agreement and to return to court in two months time. On September 30, 2013, another hearing was held at which defendant's counsel again refused to entertain any offer less than repurchase for the full redemption amount. The state court then entered an order vacating the stay of eviction and giving the plaintiffs 45 days to vacate the property. A writ of restitution was issued on December 12, 2013, and, after a brief stay of execution was granted, the plaintiffs moved out on January 7, 2014.

The plaintiffs allege that the defendant falsely represented throughout the foreclosure process that it was the holder of the mortgage, and that it had a right to foreclose on the property, but that it was willing to work with the plaintiffs to negotiate a repurchase agreement. However, the plaintiffs contend, throughout the process another lender (Bank of America) actually owned the loan, not the defendant, and, as a result, the defendant never had any right to possession, despite its attempts to record back-dated assignments of interest purporting to transfer the loan to it. The plaintiffs allege that "they suffered serious injury in that [they] lost their home to foreclosure and were evicted from their home in the middle of the Winter of 2014, lost much of [the] contents of their home, and [the plaintiffs] and their children were forced to split up and live in different counties with such of their relatives who could accommodate them, the entire process of which in turn, caused serious psychological/emotional trauma to Plaintiffs and to their children and physical harm to Plaintiffs." Compl. ¶ 191, ECF No. 1, PageID.37. It appears to be undisputed that the plaintiffs never exercised their statutory right of redemption after the foreclosure sale.

Although not discussed in the complaint, it appears to be undisputed — and confirmed by state court public records — that the plaintiffs subsequently filed a quiet title action against the present owner of the home, alleging that the foreclosure was invalid based on the same improprieties discussed above. The case eventually was dismissed on a motion for summary disposition. The plaintiffs appealed, and in its order affirming the dismissal the Michigan Court of Appeals stated the following brief recap:

> Although the property in this case was foreclosed on and the redemption period expired, plaintiffs nevertheless argue that they have a continuing interest in the property, which is evidenced by a post-foreclosure assignment. However, it is undisputed that plaintiffs fell behind in their payments, U.S. Bank initiated foreclosure, U.S. Bank purchased the property, U.S. Bank was issued a sheriff's deed, and plaintiffs failed to redeem the property. Accordingly, plaintiffs' interest in the property was extinguished.

*Talbot v. Davis*, No. 323240, 2015 WL 9257863, at *1 (Mich. Ct. App. Dec. 17, 2015). The plaintiffs also evidently filed suit against the defendant's law firm, Orlans Associates, P.C., alleging that it wrongfully converted funds deposited into the escrow account during the foreclosure proceedings. That case also was dismissed summarily.

The plaintiffs filed their complaint in this Court on January 29, 2019. The defendant responded with its motion to dismiss.

II.
A.

The defendant brought its motion to dismiss under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). The defendant argues that the plaintiffs' complaint amounts to little more than an attack on the state court judgments of eviction and denying their quiet title claim. Therefore, it says, only the Supreme Court has jurisdiction to entertain such a challenge, according to the *Rooker-Feldman* doctrine.

"The *Rooker-Feldman* doctrine bars lower federal courts from conducting appellate review of final state-court judgments because 28 U.S.C. § 1257 vests sole jurisdiction to review such claims in the Supreme Court." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)). "*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), hold that only the Supreme Court may review judgments entered by state courts in civil litigation." *Fowler v. Benson*, 924 F.3d 247, 254 (6th Cir. 2019). The eponymous "doctrine, therefore, bars a lower federal appellate court from reviewing a plaintiff's claim when a state court's judgment is the source of the plaintiff's injury." *Ibid.*

Here, the plaintiffs' claim is based on common law fraud. It is true that the premises underlying that claim are inconsistent with the state court judgments, but the plaintiffs are not attacking the judgments as such. They do not seek to set aside the judgment of eviction or recover title to the property. Instead, they seek to recover damages stemming from the allegedly independent fraudulent actions of the defendant that instigated the foreclosure, which resulted inevitably thereafter in the dispossession.

It is well settled that "[t]he *Rooker–Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a

party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293 (quotations omitted).

In the foreclosure context, the Sixth Circuit repeatedly has held that a suit premised on independently fraudulent conduct by a defendant, not comprising a direct attack on the judgment of possession, is not barred by *Rooker-Feldman*. *See*, *e.g.*, *Veasley v. Fed. Nat. Mortg. Ass'n (FNMA)*, 623 F. App'x 290, 295 (6th Cir. 2015) ("Veasley's complaint claims that the defendants engaged in independent acts, i.e. the assignment of a faulty mortgage in violation of Mich. Comp. Laws § 600.3204, which gave rise to the state court's judgment of possession. *Rooker-Feldman* does not preclude this court's jurisdiction over Veasley's case because the previous action in Michigan's 46th court, in which Fannie Mae sought to recover possession of 24669 Lafayette, was merely a continuation of the injury stemming from BAC's faulty assignment and subsequent foreclosure proceedings. Veasley does not claim that the state court judgments are unconstitutional or in violation of federal law; instead Veasley raises an independent claim which this court has jurisdiction to review."); *Brown v. First Nationwide Mortg. Corp.*, 206 F. App'x 436, 440 (6th Cir. 2006) ("Brown's allegations of fraud in connection with the state court proceedings . . . did not constitute complaints of injuries caused by the state court judgments, because they do not claim that the source of Brown's alleged injury is the foreclosure decree itself. Instead, the claims concern the actions of defendant First Nationwide (and others) that preceded the decree. Therefore, Brown's claim that the mortgage foreclosure decree was procured by fraud is not barred by *Rooker-Feldman*."). Those cases stand in contrast with suits where the plaintiffs seek directly or by implication to overturn the state court judgment, which *Rooker-Feldman* does prohibit. *E.g.*, *Givens v. Homecomings Fin.*, 278 F. App'x 607, 609 (6th Cir. 2008) ("Givens requests in his complaint . . . a temporary injunction that would 'enjoin Defendants from physically entering onto

plaintiff's property' and that would 'dispose of any other civil or procedural action regarding the subject property.' Because the point of this suit is to obtain a federal reversal of a state court decision, dismissal on the grounds of *Rooker-Feldman* was appropriate."). That is true regardless of how "intertwined" the factual premises of the causes of action are with any dispositive facts contested in the state court action. *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir. 2006) ("This situation was explicitly addressed by the *Exxon Mobil* Court when it stated that even if the independent claim was inextricably linked to the state court decision, preclusion law was the correct solution to challenge the federal claim, not *Rooker-Feldman*.").

The defendant's jurisdictional challenge is not well taken. It does not furnish a basis to dismiss the complaint.

B.

The defendant also invokes Rule 12(b)(6), however, contending for several reasons that the complaint fails to state a viable claim. "To survive a motion to dismiss [under that rule], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A "claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). When reviewing the motion, the Court "must 'construe the complaint in the light most favorable to the plaintiff[] [and] accept all well-pleaded factual allegations as true.'" *Id.* at 951 (quoting *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017)).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). But the Court also may consider the

documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010); *see also Cates v. Crystal Clear Tech., LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (instructing that "'[w]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.'") (quoting *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012)). However, beyond that, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

The defendant contends that the plaintiffs have not stated a viable claim in their complaint because their attempt to relitigate the propriety of the foreclosure is barred by the doctrine of *res judicata*, they have no legal interest in the property and thus have no standing to challenge the assignment of the mortgage which preceded the foreclosure, the fraud claims all are time-barred, and the fraud allegations are not pleaded with sufficient particularly under Rule 9(b). Only the first of those arguments need be addressed.

*Res judicata* and its sister doctrine, collateral estoppel, are sometimes referred to, respectively, as claim preclusion and issue preclusion. "Claim and issue preclusion generally prevent parties from raising an argument that they already fully litigated in an earlier legal proceeding." *Anderson v. City of Blue Ash*, 798 F.3d 338, 350 (6th Cir. 2015). "'State-court judgments are given the same preclusive effect under the doctrines of *res judicata* and collateral

estoppel as they would receive in courts of the rendering state.'" *Ibid.* (quoting *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011)). "In other words, if an individual is precluded from litigating a suit in state court by the traditional principles of *res judicata*, he is similarly precluded from litigating the suit in federal court." *Ibid.* (quotations omitted). The Court will "'look to the state's law to assess the preclusive effect it would attach to that judgment.'" *Ibid.*

These preclusion doctrines bar the plaintiffs from relitigating for a third time the sole substantive question on which their fraud claim turns, which is whether the defendant had the legal standing to initiate a foreclosure proceeding against their home. The plaintiffs' complaint is replete with allegations of other improprieties by the defendant, which center principally around (1) the allegedly defective, fraudulent, or invalid conveyance to the defendant of its asserted ownership interest in the mortgage, and (2) repeated broken or illusory promises to entertain overtures by the plaintiffs aimed at securing a loan modification or redemption of the property. However, the gravamen of the fraud claim is best illustrated by the plaintiffs own pleading at the outset of the complaint:

> Plaintiffs dispute the title and ownership of the Property in that the originating mortgage lender (Wilmington Finance), and others alleged to have ownership of Plaintiffs' mortgage and note, have unlawfully sold, assigned and/or transferred their ownership and security interest in Plaintiffs' mortgage and note, and, thus, do not have lawful ownership or a security interest in the Property sufficient to foreclose on the Property.
>
> For these reasons, the Court should find that Defendant fraudulently obtained title to the Property, as further alleged below, and award to Plaintiffs damages they have incurred as a result of Defendant's fraudulent conduct against Plaintiffs.

Compl. ¶ 12-13, ECF No. 1, PageID.4. Moreover, the plaintiffs disclaim in their response any attempt to pursue claims premised on broken promises or defective assignments; instead, they explain that those allegations were added merely as "background" to illustrate how the defendant misrepresented its legal standing. They insist that their sole substantive claim of fraudulent

misconduct is based on the defendant's wrongful commencement and continuation of foreclosure and possession actions that it had no standing to bring in the first instance.

The plaintiffs, therefore, have trained their sights on the one fact essential to their fraud claim, namely, that the defendant misrepresented that it had a legal interest in the property. It is elementary that to prevail on their fraud claim the plaintiffs must plead and prove that the defendant represented that it had standing to foreclose, and that the representation was false. *Johnson v. USA Underwriters*, --- N.W.2d ---, No. 340323, 2019 WL 2111326, at *3 (Mich. Ct. App. May 14, 2019). But that fact necessarily has been decided against them in two state court proceedings.

1.

Under Michigan law, "[r]es judicata applies if '(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.'" *Ibid.* (quoting *Adair v. State*, 470 Mich. 105, 121, 680 N.W.2d 386, 396 (2004)). Here, the judgment of possession in the eviction proceeding has conclusive *res judicata* effect on the question whether the defendant had the right to foreclose and obtain possession of the home. First, it is undisputed that the summary proceeding was decided on the merits when, after considerable litigation, a judgment of possession and writ of restitution were issued by the state court. Second, the parties were identical in both suits.

Third, the question whether the defendant had the right to foreclose on the property and obtain possession necessarily and conclusively was settled adversely to the plaintiffs by the issuance of the judgment dispossessing them of the home. Michigan's statute governing summary proceedings for possession, Michigan Compiled Laws § 600.5714(1)(g), provides that "'[a] person entitled to possession of premises may recover possession by summary proceedings . . . [w]hen a person continues in possession of premises sold by virtue of a mortgage or execution, after the

time limited by law for redemption of the premises.'" *Johnston v. Sterling Mortg. & Inv. Co.*, 315 Mich. App. 724, 757, 894 N.W.2d 121, 137 (2016). The *Johnston* court confronted and squarely rejected claims identical to those raised in the present suit, where a plaintiff attempted in a subsequent quiet title action to relitigate the propriety of the defendants' title claim that was a necessary premise of the summary judgment for possession. As the court held, "[t]he statute merely provides that possession is not a landlord's only remedy [and] '[n]othing in the statute or in *JAM Corp. v. AARO Disposal, Inc.*, 461 Mich. 161, 600 N.W.2d 617 (1999), stands for the proposition that, having litigated in the district court the issue who has the right to the premises, that question can be relitigated *de novo* in a subsequent suit. Such an approach would empty Mich. Comp. Laws § 600.5701 *et seq.* of all significance.'" *Johnston*, 315 Mich. App. at 757, 894 N.W.2d at 138 (quoting *Sewell v. Clean Cut Mgmt., Inc.*, 463 Mich. 569, 575, 621 N.W.2d 222, 224 (2001)).

The plaintiffs principally cite the Michigan Supreme Court's *JAM Corporation* decision for the proposition that claims which "could have been brought" in the summary eviction proceeding but were not actually litigated are not subject to the ordinarily broad preclusion of all potential claims under Michigan's concept of claim preclusion. But as the *Sewell* court explained, the question here is settled by a straightforward application of Michigan's rule of *res judicata* because the issue of the propriety of the defendant's title claim and right to obtain possession which the plaintiffs now seek to revisit *was actually litigated*, and comprised the precise central legal question squarely and necessarily taken up by the eviction court:

> Our decision in *JAM Corp.* said nothing about the preclusive effect of claims actually litigated in the summary proceedings. Thus, the "other claims of relief," described in *JAM Corp.* were those claims that "could have been" brought during the summary proceedings, but were not. This Court was not describing subsequent claims involving the issues actually litigated in the summary proceedings.

> In the present case, Ms. Sewell sought damages for personal injuries suffered on Mr. Cruse's premises and for damage to personal property. Mr. Cruse says she was a trespasser and that the circuit court should have granted a directed verdict in his favor. We need not decide in this opinion the full effect of the district court's judgment and writ, with respect to the status of Ms. Sewell as she entered the premises or the extent, if any, of Mr. Cruse's duty toward her. However, we do hold that, where the district court judgment and writ have not been reversed or vacated, they are conclusive on the narrow issue whether the eviction was proper.
>
> Unlike *JAM Corp.*, this case presents a question regarding the preclusive effect of a claim that was actually litigated in the summary proceeding. Therefore, the limited statutory exception to Michigan's *res judicata* rule does not apply.

*Sewell*, 463 Mich. at 576-77, 621 N.W.2d at 225 (quotations and citations omitted).

In summary proceedings under Michigan law, the plaintiff — in this case U.S. Bank — has the burden to prove that it has a right to possession of the property. *Rathnaw v. Hatch*, 281 Mich. 402, 404, 275 N.W. 189, 189 (1937). That essential element, therefore, must have been "actually litigated" in the eviction and quiet title proceedings.

Just as in the *Sewell* case, the plaintiffs here seek to recover purported "damages" that flowed from what they allege was a fraudulently instigated eviction. But they are barred from relitigating whether the defendant had the legal standing — that is, had an interest in the property — to obtain its judgment of possession, because that question necessarily was litigated and settled in the summary proceeding.

2.

The plaintiffs did not raise any counter-claim for "fraud" in the eviction case, and such a claim nominally would not be barred by Michigan's rule against claim preclusion (except as noted above), due to the limited application of that concept to summary proceedings for possession. *See JAM Corp.*, 461 Mich. at 168-69, 600 N.W.2d at 621 (recognizing that "the Legislature took [summary proceedings] cases outside the realm of the normal rules concerning merger and bar in order that attorneys would not be obliged to fasten all other pending claims to the swiftly moving

summary proceedings"). However, the plaintiffs are additionally barred from pursuing any such claims here by the application of collateral estoppel (a.k.a. issue preclusion) based on the later quiet title action. That is because all the claims of fraudulent conduct by the defendant expressly were pleaded by the plaintiffs in their complaint in the quiet title suit, which was against defendant's successor in interest, and those claims were dismissed on the merits by the state court and affirmed on appeal.

Under Michigan law, "'[c]ollateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding.'" *Ibid.* (quoting *Leahy v. Orion Twp.*, 269 Mich. App. 527, 530, 711 N.W.2d 438, 441 (2006)). "Unlike *res judicata*, which precludes relitigation of claims, collateral estoppel prevents relitigation of issues, which presumes the existence of an issue in the second proceeding that was present in the first proceeding." *Ibid.* (citations omitted). "'Generally, for collateral estoppel to apply three elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel.'" *Ibid.* (quoting *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 682-84, 677 N.W.2d 843, 845-46 (2004)).

First, there is no question that the judgment in the quiet title action was a valid and final judgment, which was upheld on appeal. The plaintiffs here argue that the claims were different because the Davis "action was one to quiet title based on the existence of two competing title chains, the alleged inferior chain being held by Davis." But as to the specific issue of the propriety of U.S. Bank's institution of the foreclosure, and the validity of its ensuing deed, the factual

grounds of the claims in both cases are identical. The plaintiffs thus are estopped from relitigating the merits of the same issue that already was resolved against them when their claims in the Davis case were dismissed with prejudice. Because the claim of superior title actually was raised by the plaintiffs in the quiet title action and determined adversely to them, they are barred from relitigating it here. *In re Dott Acquisition, LLC*, 520 B.R. 588, 607 (Bankr. E.D. Mich. 2014) ("[T]he ownership of the Real Property and Equipment was expressly placed in issue in the counterclaim filed by Dott Acquisition in the Oakland County Lawsuit. Paragraph 58 of the counterclaim sought a declaration that TTOD has no right to maintain any action for the return of the Real Property and Equipment. The issue of ownership was actually litigated in the Oakland County Circuit Court. [T]he issue of ownership of the Real Property and Equipment was necessarily determined, unfavorably to Dott Acquisition, by the express dismissal of Dott Acquisition's counterclaims in the Opinion and the Judgment."); *Johnston v. Sterling Mortg. & Inv. Co.*, 315 Mich. App. 724, 756, 894 N.W.2d 121, 137 (2016) ("[T]he summary proceeding involved the same parties as the present case (or their privies), the case was decided on its merits, and Appellants raised the argument that Appellees frustrated their attempts to redeem the property; therefore, *res judicata* and collateral estoppel precluded Appellants from bringing the quiet title action."); *Bryan v. JPMorgan Chase Bank*, 304 Mich. App. 708, 716, 848 N.W.2d 482, 486 (2014) ("In this case, the prior eviction involved the same parties as the present case, the case was decided on its merits, and plaintiff raised the argument that the foreclosure was void *ab initio*; therefore, *res judicata* and collateral estoppel precluded plaintiff from bringing this quiet title action."); *Laues v. Roberts*, No. 14-12313, 2015 WL 1412631, at *7 (E.D. Mich. Mar. 25, 2015) ("All of the requirements for issue preclusion are also satisfied in this case, with regard to the Laueses' allegations attacking the validity of the mortgages and fraud in connection with the mortgage loans.

That is, those issues were raised and actually litigated in *Laues I*, the determination of those issues was necessary to the outcome of the proceeding, Judge Roberts issued a final judgment on the merits in *Laues I*, and the Laueses had a full and fair opportunity to litigate those issues. Accordingly, the Laueses' claims are barred by both claim and issue preclusion.").

Second, the plaintiffs certainly had a "full and fair opportunity" to litigate the pleaded claims of fraud, which were set out in their complaint in materially identical detail to the claims set forth in their pleadings here. The plaintiffs counter that they "would not have had factual development sufficient to bring a full fraud claim against Defendant." But that contention is belied by the factual recitations in the quiet title complaint, which are materially identical in substance to their pleadings of U.S. Bank's improprieties described in this case. The plaintiffs alleged in their complaint in the quiet title case that the defendant, Robert Davis, was a "successor-in-interest to the Property through a 'Covenant Deed' provided by [U.S. Bank, N.A.] to Defendant dated February 27, 2014." Compl. ¶ 4, ECF No. 7-12, PageID.230, *Talbot v. Davis*, No. 14-386 (Washtenaw Cty. Cir. Ct. Apr. 21, 2014). The plaintiffs claimed that the "Defendant's Covenant Deed to the Property is invalid and unenforceable," for the verbatim reasons recited in their present complaint, including that the assignment of the mortgage was invalid and not recorded, and that it violated various other statutory and regulatory requirements. Compl. ¶ 5, PageID.230-37. The plaintiffs alleged that their title claim was superior to Davis's due to the defects in the chain of title obtained by U.S. Bank, N.A., which, according to them, invalidated Davis's title. The plaintiffs' claim of superior title was dismissed on the merits by the state court and affirmed on appeal.

Third, the estoppel is mutual because, had the suit gone otherwise, Davis would have been as bound to the result as were the plaintiffs when their claims failed. The plaintiffs point out that the Davis lawsuit involved different parties, since U.S. Bank, N.A. was not named as a defendant,

and they argue that Davis was not in privity with U.S. Bank. But the argument that privity does not obtain is contrary to well settled Michigan law.

"In order to find privity between a party and a nonparty, Michigan courts require both a substantial identity of interests and a working or functional relationship in which the interests of the non-party are presented and protected by the party in the litigation." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 13, 672 N.W.2d 351, 359 (2003) (quotations omitted). It is well settled under Michigan law that in a title contest privity embraces a successor in interest by purchase from a party to a prior action for possession. *Id.* at 13 n.9, 672 N.W.2d at 359 n.9 ("[E]ven if Barman was not the owner at the relevant time, a privy includes one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through one of the parties, as by inheritance, succession, or purchase.") (citing *Wildfong v. Fireman's Fund Ins. Co.*, 181 Mich. App. 110, 448 N.W.2d 722 (1989)). The element of privity is satisfied.

III.

The Court has subject matter jurisdiction over the claims pleaded and the suit is not barred by *Rooker-Feldman*. However, the plaintiffs are barred by claim- and issue-preclusion principles from relitigating the propriety of the defendant's claim to possession and title of their home, which conclusively was settled by the prior actions for eviction and quiet title. Those prior actions, including the pleadings and judgments filed in those cases, are matters of public record properly considered when adjudicating this motion to dismiss under Rule 12(b)(6). Because they are barred from prevailing on an essential element of their fraud claim, the plaintiffs have not stated a claim for which relief can be granted.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss the complaint (ECF No. 7) is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Date: September 3, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on September 3, 2019.

s/Susan K. Pinkowski  
SUSAN K. PINKOWSKI

---